**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| WILLIAM RUNYAN, *on behalf of all others similarly situated*, | § § § | CLASS ACTION |
| Plaintiff, | § § | CASE NO. 1:25-cv-105 |
| vs. | § § § | JURY TRIAL DEMANDED |
| | § § § | |
| VIA CREDIT UNION, | § § | |
| Defendant. | § | |

_____

## <u>ORIGINAL COMPLAINT—CLASS ACTION</u>

Plaintiff William Runyan ("Plaintiff"), individually and on behalf of all others similarly situated, sue Defendant VIA Credit Union ("ViaCU" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record.

## <u>INTRODUCTION</u>

1.      This class action arises out of the recent data security incident and data breach that was perpetrated against Defendant (the "External System Breach"), which held in its possession certain personally identifiable information ("PII" or the "Private Information") of Plaintiff and other current and former customers of Defendant, the putative class members ("Class"). This Data Breach occurred between January 18, 2025 through January 20, 2025.

1

2.     The Private Information compromised in the Data Breach included certain personal information of Defendant ViaCU's customers, including Plaintiff. The Private Information exposed to the cybercriminals included Plaintiff's and the Class Members' name, address, date of birth, Social Security number, Visa credit card number and financial account number. *See* Plaintiff's Notice at Exhibit A.

3.     Defendant has reported to the Maine Attorney General's office that the personal information of 60,853 individuals was affected in the data breach.[1]

4.     The Data Breach resulted from Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect individuals' Private Information with which it was entrusted for business relationships.

5.     Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was subjected to unauthorized access by an unknown, unauthorized third party and precisely what type of information was accessed.

6.     Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the External System Breach and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take

---

[1] Office of the Maine Attorney General, Data Breach Notifications, *available at* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f809cc53-ff4f-4760-9966-6f85fc34164a.html (*last accessed* March 3, 2025).

steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

7.     Defendant, through its employees, disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions. Defendant also failed to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff and Class Members' Private Information and failed to take standard and reasonably available steps to prevent the External System Breach.

8.     In addition, Defendant failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant's employees (presumably in the IT department) properly monitored its property, it would have discovered the intrusion sooner.

9.     Plaintiff and Class Members' identities are now at risk because of Defendant's negligent conduct, since the Private Information that Defendant collected and maintained is now in the hands of data thieves.

10.     Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes. These crimes include opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

11.     Because of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and ongoing risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

12.     Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft. [does this apply even when given free use of Experian etc resources for a year?]

13.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the External System Breach.

14.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant. [should this one be removed because they are already offering credit monitoring but for only 1 year]

15.     Accordingly, Plaintiff sues Defendant seeking redress for their unlawful conduct, and asserting claims for: (i) negligence, (ii) negligence *per se*, and (iii) breach of implied contract.

## PARTIES

16.     Plaintiff William Runyan is and at all times mentioned herein was an individual citizen of Indiana, residing in the city of Gas City.

17.     Plaintiff provided Defendant with their sensitive PII as part of the process of opening an account(s) with ViaCu. Plaintiff received notice of the External System Breach around February 24, 2025, informing him that his sensitive information was part of Defendant's External System Breach. *See* **Exhibit A**.

18.    Defendant ViaCU is an Indiana domestic nonprofit corporation with its principal place of business at 4505 S Adams St, Marion, Indiana, 46953. It can be served by serving its registered agent, Cindy Kohlmorgen, at the principal place of business.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members exceeds 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.    This Court has personal jurisdiction over Defendant because it operates and is headquartered in this District and conducts substantial business in this District.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(l) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District, maintains Plaintiff and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

22.    Defendant is a member-owned credit union that offers financial services to members throughout the United States, with over $573 million in assets and over 37,000 members.[2]

---

[2] https://www.viacu.org/about/index.html (last accessed March 4, 2025).

23.     In the ordinary course of utilizing financial services with ViaCU, each customer must provide (and Plaintiff did provide) Defendant with sensitive, personal, and private information, including his or her name, address, date of birth, Social Security number, a form of financial account information, and Visa credit card number.

24.     Defendant agreed to and undertook legal duties to maintain the Private Information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws.

25.     The customer information held by Defendant in its computer system and network included the Private Information of Plaintiff and Class Members.

### The Data Breach

26.     A Data Breach occurs when cyber criminals intend to access and steal Private Information that has not been adequately secured by a business entity like Defendant.

27.     According to Defendant's February 24, 2025, notice letter to Plaintiff Runyan (Exhibit A),

> We recently detected suspicious activity within ViaCU's computer network. Upon discovering the incident, we promptly began an internal investigation, notified law enforcement, and worked to secure our systems. We also engaged a forensic security firm to assist with our investigation and ensure the security of our computer network. The forensic investigation determined that an unknown, unauthorized third party accessed our computer system between January 18, 2025, and January 20, 2025, and acquired certain files during that time.
> …
> We reviewed the contents of files acquired by the unauthorized third party to determine if they contained any personal information. Beginning on January 24, 2025, we determined the identified files contained personal information that included your name, address, date of birth, Social Security number, Visa credit card number, and a form of financial account number.

28.    Defendant had obligations created by contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

29.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.    Defendant was or should have been aware of the significant risk that cybercriminals would attempt to steal Plaintiff's and Class Members' Private Information.

31.    As reported by the Identity Theft Resource Center, in 2024 3,158 data breaches occurred (44 shy of the all time high in 2023), resulting in around 1,246,573,396 individuals' information being compromised, a 211% increase from 2023.[3] Of the 3,158 recorded data breaches, 737 of them, or 23%, were in the financial services industry.[4]

32.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Data Breaches Are Preventable***

33.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiffs and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

---

[3] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited March 03, 2025).
[4] *Id.*

34.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

35.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

36.     To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

---

[5] How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[6]

37.    To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-Facing Assets**
-    Apply latest security updates
-    Use threat and vulnerability management
-    Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
 -    Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
 -    Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
 -    Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

---

[6] *Id.* at 3-4.

**Apply principle of least-privilege**
- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**
- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[7]

38.    Given that Defendant was storing the Private Information of its current and former patients Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

39.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of, upon information and belief, thousands to tens of thousands of individuals, including that of Plaintiffs and Class Members.

***Defendant Acquires, Collects & Stores Patients' Private Information***

40.    Defendant acquires, collects, and stores a massive amount of Private Information on its current and former patients.

41.    As a condition of receiving financial services from Defendant, Defendant requires that patients entrust it with highly sensitive personal information.

---

[7]  *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

42.     By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

43.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

44.     Upon information and belief, in the course of collecting Private Information from customers, including Plaintiff, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

45.     Plaintiff and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

*Value Of Private Information*

33.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

---

[8] 17 C.F.R. § 248.201 (2013).
[9] *Id.*

11

34.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[10]

35.     For example, Personal Information can be sold at a price ranging from $40 to $200.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

36.     Theft of PHI is gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[13]

37.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

38.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/

[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/

[12] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/

[13] *Medical I.D. Theft*, EFraudPrevention https://efraudprevention.net/home/education/?a=187#:~:text=A%20thief%20may%20use%20your,credit%20report%20may%20be%20affected. (last visited February 17, 2025).

[14] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf

39.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

### *Defendant Failed to Comply with FTC Guidelines*

40.      The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

41.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[16]

42.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

---

[15] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf    (last    visited March 03, 2025).
[16] *Id*.

43.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect client data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

44.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

45.     Defendant was always fully aware of its obligation to protect the PII of its customers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

### Defendant Failed to Comply with Industry Standards

46.     As shown above, financial institutions are widely known to be particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

47.     Several best practices have been identified that at a minimum should be implemented by employers like Defendant, including, but not limited to, educating all employees; strong passwords; multi-layer security, including firewalls, antivirus, and antimalware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

48.     Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and

routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

49.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

50.    These foregoing frameworks are existing and applicable industry standards for any business that handles and stores large volumes of sensitive information, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

## **DEFENDANT'S BREACH**

51.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.   Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b.   Failing to adequately protect customers' Private Information;

c.   Failing to properly monitor its own data security systems for existing intrusions;

d.   Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

e.   Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

f.   Failing to adhere to industry standards for cybersecurity; and

g.   Failing to provide notice once the scope of the breach was determined.

46.    As the result of computer systems needing security upgrading, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

47.    Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

*Because of Defendant's Failure to Safeguard Private Information, Plaintiff and the Class Members Have and Will Experience Substantial Harm in the Form of Risk of Continued Identity Theft.*

48.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

49.    The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

50.    Because of Defendant's failures to prevent—and to timely detect—the External System Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

   a.  The loss of the opportunity to control how their PII is used;

   b.  The diminution in value of their PII;

   c.  The compromise and continuing publication of their PII;

   d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

   e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and consequences of the External System Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Delay in receipt of tax refund monies;

    g.   Unauthorized use of stolen PII; and

    h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

51.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

52.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

53.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to abuse that information for money.

54.    One such example of criminals using PII for profit is the development of "Fullz" packages.

55.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

56.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and

sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

57.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

58.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly report to Plaintiff and the Class that their PII had been stolen.

59.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

60.    In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

61.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

62.    The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[17]

63.    The FTC has also issued many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

(1) encrypting information stored on computer networks;

(2) retaining payment card information only as long as necessary;

(3) properly disposing of personal information that is no longer needed;

(4) limiting administrative access to business systems;

(5) using industry-tested and accepted methods for securing data;

(6) monitoring activity on networks to uncover unapproved activity;

(7) verifying that privacy and security features function properly;

(8) testing for common vulnerabilities; and

(9) updating and patching third-party software.

64.    According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[18] The FTC treats the failure to employ reasonable and appropriate measures to protect against

---

[17] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited October 4, 2024).

[18] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited October 4, 2024).

unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

65.     Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

<strong><u>PLAINTIFF'S EXPERIENCE</u></strong>

66.     Plaintiff William Runyan is and at all times mentioned herein was an individual citizen of Illinois, residing in the city of Highland Park.

67.     Plaintiff was account holders at ViaCU, requiring them to provide their Private Information to Defendant.

68.     After Plaintiff provided Private Information, Defendant suffered a Data Breach.

69.     Plaintiff reasonably expected and understood that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard their Private Information from unauthorized users or disclosure, and would timely notify them of any data security incidents related to the same. Plaintiff would not have provided their Private Information to Defendant had they known that Defendant would not take reasonable steps to safeguard it.

70.     Plaintiff William Runyan received a Notice Letter, dated February , 2024, stating that his "name in combination with [his] address, financial account number, Social Security number, Visa credit card number, and a form of financial account number" were contained in a file on the computer network infiltrated by an unknown, unauthorized third party. Exhibit A.

71.     Because of the External System Breach and at the recommendation of Defendant and its Notice, Plaintiff made reasonable efforts to mitigate the effect of the Data Breach, including, but not limited to, researching the External System Breach and monitoring their credit and financial statements.

72.     Plaintiff has spent much time responding to the dangers from the External System Breach and will continue to spend valuable time they otherwise would have spent on other activities, including, but not limited to work and recreation.

73.     Even with the best response, the harm caused to Plaintiff cannot be undone.

74.     Plaintiff knows that cybercriminals often sell Private Information, and that their PII could be abused months or even years after a data breach.

75.     Had Plaintiff been aware that Defendant's computer systems were not secure, they would not have entrusted Defendant with their personal data.

## PLAINTIFF'S AND CLASS MEMBERS' DAMAGES

76.     To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the External System Breach, including, but not limited to, the costs and loss of time they incurred because of the External System Breach. Defendant has only offered 12 months of inadequate credit monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

77.     The 12 months of credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud.

78.    Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the External System Breach.

79.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the External System Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this External System Breach.

80.    Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the External System Breach.

81.    Plaintiff was damaged in that his Private Information is in the hands of cyber criminals.

82.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

83.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

84.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

85.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

86.     Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

87.     Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the External System Breach. Many courts have recognized the propriety of loss of value damages in related cases.

88.     Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

**89.**     Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the External System Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the External System Breach relating to:

a.  Reviewing and monitoring financial and other sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b.  Purchasing credit monitoring and identity theft prevention;

c.  Placing "freezes" and "alerts" with reporting agencies;

d.  Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e.  Contacting financial institutions and closing or modifying financial accounts; and and

f.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

94.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to,

making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is limited to authorized users of such data.

95.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## **CLASS ACTION ALLEGATIONS**

96.    This action is brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97.    Plaintiff brings this action on behalf of themselves and on behalf of all other persons similarly situated.

98.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised because of the January 18-20, 2025 Data Breach (the "Class").**

99.    Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

100.    Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

101.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them in a single proceeding is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has reported to the Maine Attorney General that 60,853 individuals were affected by the External System Breach.

24

102.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

    b.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the External System Breach;

    c.  Whether Defendant's data security systems prior to and during the External System Breach complied with applicable data security laws and regulations;

    d.  Whether Defendant's data security systems prior to and during the External System Breach adhered to industry standards;

    e.  Whether Defendant owed a duty to Class Members to safeguard their Private Information;

    f.  Whether Defendant breached its duty to Class Members to safeguard their Private Information;

    g.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

    h.  Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;

    i.  Whether Defendant failed to provide notice of the External System Breach promptly; and

    j.  Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

103.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the External System Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of themselves and

all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

104.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

105.    Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data were stored on the same computer network systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

106.    Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

107.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

108.    Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

109.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CAUSES OF ACTION

### FIRST COUNT
### NEGLIGENCE
**(On Behalf of Plaintiff and All Class Members)**

110.    Plaintiff re-alleges and incorporate the above allegations as if fully set forth herein.

111.    Defendant required Plaintiff and Class Members to submit non-public personal information to do business with ViaCU.

112.    By collecting and storing this data in Defendant's computer property, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of an External System Breach.

113.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

114.    Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Private Information, a necessary part of obtaining services from Defendant.

115.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

116.    Defendant further had a duty to use reasonable care in protecting confidential data because Defendant is bound by industry standards to protect confidential Private Information.

117.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b.    Failing to adequately monitor the security of its networks and systems;

c.    Allowing unauthorized access to Class Members' Private Information;

d.    Failing to detect timely that Class Members' Private Information had been compromised;

e.    Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

f.    Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

118.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

119.    It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

120.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

121.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class Members in an unsafe and unsecure manner.

122.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and All Class Members)**

123.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

124.    Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

125.    Under the Indiana Code §24-4.9-3-3 *Delay of disclosure or notification*, Defendant had a duty to "make the disclosure or notification without unreasonable delay but not more than forty-five days after the discovery of the breach…a delay is reasonable only if the delay is: (1) necessary to restore the integrity of the computer system; (2) necessary to discover the scope of the breach; or (3) in response to a request from the attorney general or a law enforcement agency to delay disclosure because disclosure will:(A) impede a criminal or civil investigation; or (B) jeopardize national security. " IC §24-4.9-3-3(a). Furthermore, Defendant was required to make a disclosure or notification under this chapter shall make the disclosure or notification as soon as possible after: (1) delay is no longer necessary to restore the integrity of the computer system or to discover the scope of the breach; or (2) the attorney general or a law enforcement agency notifies

the person that delay will no longer impede a criminal or civil investigation or jeopardize national security. IC §24-4.9-3-3(b).

126.    Under the Indiana Duties of a data base owner, Defendant had a duty to implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect and safeguard from unlawful use or disclosure any personal information of Indiana residents collected or maintained by the data base owner. IC §24-4.9-3-3.5(c). Thus, Defendant breached its duties to Plaintiff and Class Members under Federal and state law by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

127.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

128.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

129.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

130.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

### THIRD COUNT
### BREACH OF IMPLIED CONTRACT
#### (On Behalf of Plaintiff and All Class Members)

131.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

132.    When Plaintiff and Class Members provided their Private Information to Defendant in exchange for Defendant's services, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

133.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

134.    In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and adhered to industry standards.

135.    Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

136.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

137.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

138.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

139.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

140.    As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

141.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

142.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class described above seeks the following relief:

a.  For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and their counsel to represent the Class, and finding that Plaintiff are proper representatives of the Class requested herein;

b.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c.  For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the External System Breach;

d.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e.  For an Order directing Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g. For an award of punitive damages, as allowable by law;

h. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i. Pre- and post-judgment interest on any amounts awarded; and

j. Any other relief that this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Date: March 06, 2025                    Respectfully submitted,

*/s/ Ronald E. Weldy*
Ronald E. Weldy, #22571-49
Weldy Law
11268 Governors Lane
Fishers, IN 46037
(317) 842-6600
rweldy@weldylegal.com

Leigh S. Montgomery (*pro hac vice* forthcoming)
Texas Bar No. 24052214
**EKSM, LLP**
4200 Montrose, Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
lmontgomery@eksm.com
service only: service@eksm.com

**ATTORNEYS FOR WILLIAM RUNYAN AND THE PUTATIVE CLASS**